**In re Fred J. WINES, Debtor.**

**Bankruptcy No. 89–14719–BKC–SMW.**

United States Bankruptcy Court,
S.D. Florida.

April 16, 1990.

Robert C. Meyer, Haley, Sinagra & Perez, P.A., Miami, Fla., for Gui Govaert, trustee.

Arthur S. Weitzner, Weitzner & Co., P.A., Miami, Fla., for Fred Wines, debtor.

Eric J. Taylor, Asst. Atty. Gen. of Florida, Tallahassee, Fla., Brian F. Kidwell, O'Neill, Burke, O'Neill, Leonard and O'Brien, Ltd., St. Paul, Minn., for Objecting Creditor Advance–United Expressways, Inc.

## ORDER OVERRULING OBJECTIONS TO CLAIMED EXEMPTION

SIDNEY M. WEAVER, Chief Judge.

This matter came before the Court for hearing on February 8, 1990, at 9:30 a.m. on the objections to a claimed exemption. The Court heard the argument of counsel for Gui Govaert, the trustee, and counsel for the debtor and thereafter studied the memoranda of law submitted by the trustee, the debtor, and an objecting creditor as well as conducted its own additional research.

The central facts of this matter are not in dispute. The debtor has claimed as exempt an annuity which was purchased by his former employer when it terminated a company pension plan upon its bankruptcy. The debtor originally scheduled the property as exempt as "pension disability payments" pursuant to § 222.21, Florida Statutes but, by amendments, has claimed the annuity as exempt under §§ 222.14, 222.18, and 222.201, Florida Statutes. The trustee and a creditor timely objected to the claimed exemption.

The creditor objected to the claimed exemption · solely on the argument that § 222.21, Florida Statutes,[1] is unconstitu-

---

1. *222.21 Exemption of pension money and retirement or profit-sharing benefits from legal processes.*

    *(1) Money received by any debtor as pensioner of the United States within 3 months* next preceding the issuing of an execution, attachment, or garnishment process may not be applied to the payment of the debts of the pensioner when it is made to appear by the affidavit of the debtor or otherwise that the

tional under *Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) and the cases from other jurisdictions which, in reliance upon *Mackey,* have held similar exemption statutes unconstitutional as being preempted by Section 514(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1144(a). This Court previously has rejected that argument and upheld § 222.21 in *In re Bryan,* 106 B.R. 749 (Bkrtcy.S.D. Fla.1989) (Britton, C.J.) and in *In re Martinez,* 107 B.R. 378 (Bkrtcy.S.D.Fla.1989) (Weaver, J.), and there is no need here to

repeat the bases for the Court's conclusions.[2] Furthermore, the debtor has asserted additional, independent grounds for exempting the annuity which, if applicable and valid, would accomplish the result of exempting the annuity without having to decide the more difficult issue of whether an annuity bought when a pension plan described in § 222.21 is terminated is nevertheless entitled to the exemption afforded by § 222.21.

The debtor relies on § 222.18, Florida Statutes.[3] However, the annuity in question does not appear to be one provided to the debtor on the basis of his disability,

---

*pension money is necessary for the maintenance of the debtor's support or a family supported wholly or in part by the pension money. The filing of the affidavit by the debtor, or the making of such proof by the debtor, is prima facia evidence; and it is the duty of the court in which the proceeding is pending to release all pension moneys held by such attachment or garnishment process, immediately, upon the filing of such affidavit or the making of such proof.*

*(2)(a) Except as provided in paragraph (b), any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement or profit-sharing plan that is qualified under s. 401(a), s. 403(a), s. 403(b), s. 408, or s. 409 of the Internal Revenue Code of 1986, as amended, is exempt from all claims of creditors of the beneficiary or participant.*

*(b) Any plan or arrangement described in paragraph (a) is not exempt from the claims of an alternative payee under a qualified domestic relations order. However, the interest of any alternate payee under a qualified domestic relations order is exempt from all claims of any creditor, other than the Department of Health and Rehabilitative Services, of the alternate payee. As used in this paragraph, the terms "alternate payee" and "qualified domestic relations order" have the meanings ascribed to them in s. 414(p) of Internal Revenue Code of 1986.*

*(c) The provisions of paragraphs (a) and (b) apply to any proceeding that is filed on or after October 1, 1987.*

**2.** Subsequent to these rulings, the United States Supreme Court made its ruling in *Guidry v. Sheet Metal Workers National Pension Fund,* — U.S. —, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), in which the Court held that the anti-alienation provision found in § 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1), precluded, *without exception,* the garnishment or other alienation of ERISA plan benefits. The Court analogized § 206(d)(1) with other federal provisions prohibiting garnishment of retirement benefits, the

Social Security Act, 42 U.S.C. § 407; the Railroad Retirement Act, 45 U.S.C. § 231m(a); the Civil Service Retirement Act, 5 U.S.C. § 8346(a); and the Veterans' Benefits Act, 38 U.S.C. § 3101(a). — U.S. at — and fn. 13, 110 S.Ct. at 684 and fn. 13. As the Court said, § 206(d)(1) is "consonant with other statutory provisions designed to safeguard retirement income," — U.S. at —, 110 S.Ct. at 685, and "reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them.... As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text." — U.S. at —, 110 S.Ct. at 687. Given that these other statutes cited by the Court consistently have been recognized as available under 11 U.S.C. § 522(b)(2)(A) to exempt similar property rights, 3 *Collier on Bankruptcy* ¶ 522.09 (15th ed. rev.1989), the decision casts doubt on the holding in *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985), that ERISA § 206(d)(1) is not an exemption under federal law available to a debtor pursuant to 11 U.S.C. § 522(b)(2)(A) and suggests that the reasoning in *In re Komet,* 104 B.R. 799, 808–816 (Bkrtcy. W.D.Tex.1989) will prevail. In that eventuality, the constitutionality of statutes such as § 222.21, Florida Statutes, as applied to ERISA retirement benefits would become irrelevant.

**3.** *222.18 Exempting disability income benefits from legal processes.—Disability income benefits under any policy or contract of life, health, accident, or other insurance of whatever form, shall not in any case be liable to attachment, garnishment, or legal process in the state, in favor of any creditor or creditors of the recipient of such disability income benefits, unless such policy or contract of insurance was effected for the benefit of such creditor or creditors.*

although his ability to receive proceeds of the annuity earlier than his normal retirement age by virtue of his disability does create doubt in the Court's mind. However, given the Court's ruling with respect to § 222.14, Florida Statutes, *infra*, it is not necessary to decide this issue.

■ Another statutory basis relied upon by the debtor is § 222.201, Florida Statutes,[4] which makes exempt property of the type described in 11 U.S.C. § 522(d)(10). The debtor specifically relies upon § 522(d)(10)(E), but that section requires a showing that the property to be exempted is "reasonably necessary for the support of the debtor and any dependent of the debtor." The Court feels that, on the record before it, it cannot conclude that § 222.201 serves to exempt the annuity in question.

■ The thrust of the trustee's position is that the annuity, while literally protected by § 222.14, Florida Statutes,[5] is not exempt because, he argues, § 222.14 violates the exemption provisions of the Florida Constitution, found in Article X, Section 4. The debtor's first response is that this Court lacks jurisdiction to rule on the validity under a state constitution of a state law or that, if there is jurisdiction, the Court should abstain. As to jurisdiction, this Court clearly has jurisdiction under 28 U.S.C. § 157(d)(2)(B) of this core proceeding, and the Court cannot imagine anything more central to the granting of a "fresh start" to a debtor than its jurisdiction over exemption and discharge issues. As to abstention, the Court notes that the debtor did not file a motion for abstention as provided by Bankruptcy Rule 5011(b). Nor does it appear that abstention here is appropriate under 28 U.S.C. § 1334(c)(1) and *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940). In *Thompson,* the Supreme Court held that the bankruptcy court should have abstained from deciding a difficult issue of Illinois property law and noted that two Circuit Courts of Appeal had reached different results in attempting to determine that state law. Here, this Court finds no such difficulty in discerning the laws of Florida as spoken by the Supreme Court of Florida, and there have not been differing results reached by different courts on what this Court finds to be the dispositive issue. Thus, this Court feels that its "respect for State law" does not mandate abstention, particularly when the Court's decision results in its upholding a state statute. *See* 28 U.S.C. § 1334(c)(1).[6]

■ The trustee's argument is that Article X, Section 4 of the Florida Constitution[7] limits personal property exemptions

---

4. *222.201 Availability of federal bankruptcy exemptions.—*

(1) Notwithstanding s. 222.20, an individual debtor under the federal Bankruptcy Reform Act of 1978 may exempt, in addition to any other exemptions allowed under state law, any property listed in subsection (d)(10) of s. 522 of that act.

(2) The provisions of this section apply to any bankruptcy action that is filed on or after October 1, 1987.

5. *222.14 Exemption of cash surrender value of life insurance policies and annuity contracts from legal process.—The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the state and the proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or of any creditor of the person who is the beneficiary of such annuity contract, unless*

the insurance policy or annuity contract was effected for the benefit of such creditor.

6. The Court notes that, in the event this decision is ultimately appealed to the U.S. Court of Appeals for the Eleventh Circuit, that court, if it so desires, may certify to the Florida Supreme Court the question of the validity of § 222.14 under the Florida Constitution. Fla. Const. art. V, § 3(b)(6); § 25.031, Florida Statutes; Rules 9.030 and 9.150, Florida Rules of Appellate Procedure. *See Lehman Bros. v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974); *Schein v. Chasen,* 313 So.2d 739 (Fla.1975).

7. *SECTION 4. Homestead; exemptions.—*

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:

to a value of $1,000 and that § 222.14, by exempting an annuity in an unlimited amount, violates that constitutional provision.[8] Since he is unable to refer to any decisions of Florida courts or of federal courts in Florida to that effect, he relies on the reasoning of bankruptcy courts in Arkansas which have held a statute similar to § 222.14 as invalid under the Arkansas Constitution. *In re Williams,* 93 B.R. 181 (Bkrtcy.E.D.Ark.1988); *In re Hudspeth,* 92 B.R. 827 (Bkrtcy.W.D.Ark.1988). In *Hudspeth,* followed by *Williams,* the court found that Ark.Code Ann. § 16–66–209 [9] violated Article 9, Section 2 of the Arkansas Constitution [10] because the statutory exemption provided for exempting benefits of unlimited amount while the constitutional provision provided for the exemption of "personal property ... not exceeding in value the sum of five hundred dollars ..." The U.S. Court of Appeals for the Eighth Circuit has recently agreed with this analysis of Arkansas law and held § 16–66–209 unconstitutional under the Arkansas Constitution. *Federal Savings and Loan Insurance Corp. v. Holt (In re Holt),* 894 F.2d 1005 (8th Cir.1990).

This Court is unpersuaded by these decisions. As Chief Judge Britton said, *"Hudspeth* is not binding on this court. I find the decision neither convincing nor applicable here by analogy as argued by the trustee." *In re Bryan,* 106 B.R. 749, 751 (Bkrtcy.S.D.Fla.1989). First, the language of the constitutional provision differs: The Florida Constitution states, "There shall be exempt ... personal property to the value of one thousand dollars." The Arkansas Constitution, however, provides, "The personal property ... *not exceeding in value* the sum of five hundred dollars ... shall be exempt...." (emphasis added) That distinction alone justifies a different result. However, there is far more authority for this Court's conclusion than the verbal differences.

In *Milam v. Davis,* 97 Fla. 916, 123 So. 668, *cert. denied,* 280 U.S. 601, 50 S.Ct. 82, 74 L.Ed. 646 (1929), the Florida Supreme Court decided the constitutionality under the state constitution of the predecessor of § 222.13, Florida Statutes,[11] the Act of

*(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family;*

*(2) personal property to the value of one thousand dollars.*

*(b) These exemptions shall inure to the surviving spouse or heirs or the owner.*

*(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse. If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.*

8. Since the trustee has attacked the constitutionality of a Florida statute, he gave notice to the Attorney General of Florida. The Attorney General's office declined to appear on the basis that debtor's counsel would adequately defend the challenged statute.

9. Section 16–66–209 provides in part:

   *All monies paid or payable to any resident of this state as the insured or beneficiary designated under any insurance policy ... shall be exempt from liability or seizure under judicial process of any court....*

10. Ark. Const. art. 9, § 2 provides:

   *The personal property of any resident of this State who is married or the head of a family, in specific articles to be selected by such resident, not exceeding in value the sum of five hundred dollars in addition to his or her wearing apparel, and that of his or her family, shall be exempt from seizure on attachment, or sale on execution, or other process from any court on debt by contract.*

11. *222.13 Life insurance policies; disposition of proceeds.—*

   *(1) Whenever any person residing in the state shall die leaving insurance on his life, the said insurance shall inure exclusively to the benefit of the person for whose use and benefit such insurance is designated in the policy, and the proceeds thereof shall be exempt from the claims of creditors of the insured unless the insurance policy or a valid assignment thereof provides otherwise. Notwithstanding the foregoing, whenever the insurance, by designation or otherwise, is payable to the insured or his estate or to his executors, administrators, or*

1872, chapter 1864, which then faced an attack similar to the trustee's assault. The court noted at 123 So. at 689–690: .

Sections 1 and 2, article 9, of the [Florida] Constitution of 1868, provided for an exemption of homestead real estate and the improvements thereon, "owned by the head of a family residing in this State," "together with one thousand dollars' worth of personal property," and also for the exemption of additional property to be selected by the head of a family, "to the amount of one thousand dollars," which constituted greater property exemptions from debts than those contained in article 10 of the Constitution of 1885; yet the Act of 1872, chapter 1864, enacted while the Constitution of 1868 was in force and providing that the proceeds of life insurance shall not be liable to any legal process in favor of any creditor of the insured unless the insurance policy declares that the policy was effected for the benefit of such creditor, was apparently not regarded as being violative of the exemption article of the Constitution of 1868, even though such proceeds exceed in amount the organic exemptions.

\*     \*     \*     \*     \*     \*

When the Constitution of 1885 was promulgated and adopted, chapter 1864, Acts 1872, exempting life insurance from the claims of creditors of the insured, where such insurance is not effected for or payable to creditors, was in force, and its validity not challenged. It was evi-

dently not the intent of the Constitution of 1885 that the exemptions provided for therein should supersede or limit the amount of the then existing statutory exemption of the proceeds of life insurance policies made payable by the statute. . . .

In other words, "the organic provision exempting a stated amount of the general personal property of the insured *is not exclusive and is not a limitation* upon any and all statutory exemptions in property of any kind or nature." *Milam v. Davis*, 123 So. at 690 (emphasis added).

Section 222.14 as originally enacted in 1925 exempted only the cash surrender values of life insurance policies but was amended in 1978 to add proceeds of annuity contracts. 1925 Fla.Laws, ch. 10154, § 1; 1978 Fla.Laws, ch. 78–76, § 1. When the statute was enacted in 1925, the Florida Constitution of 1885 was in effect and it contained virtually the same language as does the 1968 Constitution in exempting "one thousand dollars worth of personal property." Fla. Const. of 1885, art. X, § 1.[12] Just as *Milam v. Davis* said of § 222.13's predecessor, the legislation "was apparently not regarded as being violative of the exemption article," 123 So. at 689, and the only constitutional challenge to it under the 1885 Constitution was rebuffed in *Cooper v. Taylor*, 54 F.2d 1055 (5th Cir.), *cert. denied*, 286 U.S. 554, 52 S.Ct. 579, 76 L.Ed. 1289 (1932). When the Florida Constitution of 1968 was adopted, "[i]t basical-

---

*assigns, the insurance proceeds shall become a part of the insured's estate for all purposes and shall be administered in accordance with the probate laws of the state in like manner as other assets of the insured's estate.*

*(2) Payments as herein directed shall, in every such case, discharge the insurer from any further liability under the policy, and the insurer shall in no event be responsible for, or be required to see to, the application of such payments.*

**12.** Article X, Section 1 of the Florida Constitution of 1885 read:

*§ 1. Exemption of homestead; extent*

*Section 1. A homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family*

*residing in this State, together with one thousand dollars worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists. But no property shall be exempt from sale for taxes or assessments, or for the payment of obligations contracted for the purchase of said property, or for the erection or repair of improvements on the real estate exempted, or for house, field or other labor performed on the same. The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner; and no judgment or decree or execution shall be lien upon exempted property except as provided in this Article.*

ly restate[d] Article X, Section 1, of the 1885 Constitution."[13]  D'Alemberte, "Commentary", *Florida Constitution—1968 Revision*, 26A FLORIDA STATUTES ANNOTATED 385 (1970).  When the 1968 Constitution was adopted, again using the words of *Milam v. Davis*, § 222.14 "was in force, and its validity not challenged," 123 So. at 690, at least not until the present attack.[14]  Borrowing once more from *Milam v. Davis*, "It was evidently not the intent of the Constitution of [1968] that the exemptions provided for therein should supersede or limit the amount of the then existing statutory exemptions...."  123 So. at 690.  Given the numerous statutes exempting unlimited amounts of various property found in Chapter 222, Florida Statutes, and elsewhere in the Florida Statutes, it is inconceivable that the electorate of Florida in adopting the 1968 Constitution could have intended to invalidate those statutes which either had been upheld under virtually the identical wording of the 1885 Constitution or were never subject to constitutional attack, when such an intent could have been expressed so easily by adding, for example, "No other exemptions shall be permitted by law."

*Cooper v. Taylor*, 54 F.2d 1055 (5th Cir.), cert. denied, 286 U.S. 554, 52 S.Ct. 579, 76 L.Ed. 1289 (1932), which is binding on this Court, *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), also mandates the same conclusion.  In *Cooper v. Taylor*, the constitutionality of the predecessor of § 222.14 was challenged.  The Fifth Circuit read *Milam v. Davis* for two propositions, at 54 F.2d at 1057:

First, that the constitutional exemption is not exclusive, or a limitation upon legislative power; and, secondly, that life insurance is personal property of such peculiar nature that the constitutional exemption was not intended to apply to it.

The trustee, apparently seizing upon the second proposition, distinguishes at length between insurance and annuities and argues that, accordingly, the holdings in *Milam v. Davis* and *Cooper v. Taylor* do not validate § 222.14 to the extent that it applies to annuities.  In so arguing, however, the trustee ignores the first proposition, that the constitutional exemption is not exclusive and does not limit the legislature.  That proposition is an application of the accepted precept of Florida constitutional law that "state constitutions are in no manner grants of power, as is the federal constitution, but are limitations upon the power of the state legislature."  *Sun Insurance Office, Ltd. v. Clay*, 133 So.2d 735, 741 (Fla.1961) (jurisdiction conferred by Florida Constitution on Florida Supreme Court can be enlarged where doing so is not expressly forbidden by the Florida Constitution).  As the Florida Supreme Court stated in *Armistead v. State ex rel. Smyth*, 41 So.2d 879, 882 (Fla.1949) and repeated in *Biscayne Kennel Club, Inc. v. Florida State Racing Comm'n*, 165 So.2d 762, 763 fn. 2 (Fla.1964):

It is established law that the law-making power of the Legislature of the State of Florida is subject only to the limitations provided in our Constitution and no statute should be declared inoperative on the ground that it violates organic law, unless it clearly appears beyond all reasonable doubt that there is a positive conflict.  *City of Jacksonville v. Bowden*, 67 Fla. 181, 64 So. 769, L.R.A. 1916D, 913, Ann.Cas. 1915D, 99.

Since this Court cannot find an inconsistency between the constitutional exemptions and § 222.14, it certainly cannot find a "positive conflict."

Accordingly, on the basis of all of these authorities, this Court concludes that § 222.14, Florida Statutes, as applied to

---

**13.**  Subsequently, in 1984, the electorate of Florida amended Article X, Section 4, to substitute "a natural person" for "the head of a family" as being entitled to the constitutional exemption.

**14.**  The exemption for cash surrender value of an insurance policy found in § 222.14 was constitutionally challenged in *Slatcoff v. Dezen*, 76

So.2d 792 (Fla.1954) for arguably violating then Section 4, Declaration of Rights of the 1885 Constitution, which guaranteed that a remedy shall be provided for every injury.  The Florida Supreme Court rejected the argument.  The argument raised herein by the trustee was not addressed.

annuities is not violative of the Florida Constitution.

It is therefore

ORDERED that the trustee's and creditor's objections to the debtor's exemption of the annuity are overruled.

DONE and ORDERED.