In re Irving Richard ROSENBLOOM, a/k/a Richard Rosenbloom, a/k/a Dick Rosenbloom, Debtor.

In re Gerald R. ROSENBLOOM, a/k/a Gerry Rosenbloom, Debtor.

Bankruptcy Nos. 90–22721–BKC–SMW, 90–23321–BKC–SMW.

United States Bankruptcy Court, S.D. of Florida.

March 5, 1991.

Michael Gora, Boca Raton, Fla., for debtors.

Raymond Ray, Fort Lauderdale, Fla., for Richmond Garment Profit Sharing Plan.

Lucy DiBraccio, Hollywood, Fla., trustee.

Reggie Sanger, Fort Lauderdale, Fla., for trustee.

Patricia Redmond, Miami, Fla., for creditor.

## ORDER OVERRULING OBJECTIONS TO CLAIMED EXEMPTIONS

SIDNEY M. WEAVER, Chief Judge.

THIS MATTER came before the Court on December 11, 1990, upon the objections to the debtors' claimed exemption of a pension plan, and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, as well as the memoranda of law submitted by the parties, and being otherwise fully advised in the premises, hereby makes the following findings and conclusion of law:

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). On April 27, 1990, the debtor Irving Richard Rosenbloom filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On May 18, 1990, the debtor Gerald R. Rosenbloom filed his voluntary petition under Chapter 7 of the Bankruptcy Code. Both debtors are eligible participants under the Richmond Garment Profit Sharing Plan. Both debtors listed their interest in the plan as exempt on schedule B–3 to their bankruptcy petitions.

Lucy DiBraccio, the trustee of the Irving Rosenbloom estate, and Robert Rouleau a creditor of both the Irving Rosenbloom and Gerald Rosenbloom estates (the "movants"), filed objections to the debtors' claimed exemption. Because the same retirement plan is involved in both cases and because the issues involved in both cases are identical, the Court consolidated the hearing on these contested matters. At the conclusion of the hearing, the Court instructed the parties to submit memoranda of law briefing the issues presented.

The debtors, Irving Rosenbloom and Gerald Rosenbloom, are the sole shareholders and directors of the Richmond Garment

Company, a Virginia corporation which originally had its principal place of business in New York. Each debtor owns fifty percent of the stock of Richmond Garment. In 1970, the Richmond Garment Company, as settlor, created a money purchase pension plan known as the Richmond Garment Pension Plan (the "plan") for the benefit of its employees. The plan was qualified for tax exempt status under the applicable provisions of the Internal Revenue Code and incorporated the applicable provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). The plan was amended several times and was ultimately converted to a profit sharing plan.

The debtor, Gerald Rosenbloom, and his brother Arthur Rosenbloom are co-trustees of the plan. The plan is administered by the First Manhattan Company in New York whose general partner is Daniel Rosenbloom, the brother of the debtors. The debtors were fully vested at the time they filed their respective bankruptcy petitions. Gerald Rosenbloom has an interest in the plan benefits in the amount of $275,870.83 and Irving Rosenbloom has an interest in the plan benefits in the amount of $385,697.59. The debtor, Irving Rosenbloom, attained retirement age in May of 1990 and, under the terms of the plan, elected to defer receipt of the plan benefits until he attains the age of seventy and one-half. All other employees of the Richmond Garment Company have received their benefits under the plan.

In March of 1989, Richmond Garment ceased most of its day-to-day operations. The company currently maintains a post office box and is still an active corporation duly registered with the Virginia Secretary of State. The company is a party to multiple lawsuits now pending in various state courts. The only remaining employees of the company are the debtors, although they do not draw a salary from the company.

The movants assert that the Court should disallow the debtors' claimed exemption of the plan on the grounds that the plan is not a qualified plan under ERISA and the plan is not a spendthrift trust under Florida law. The movants contend that the Richmond Garment Company has ceased all business activities, the debtors have terminated their employment and, being fully vested in the plan, the debtors are entitled their benefits under the plan. The movants also contend that the debtors amended the plan postpetition so as to bring it within the provisions of ERISA, that Irving Rosenbloom elected to defer receipt of the plan benefits until he attained the age of seventy and one-half so as to keep the plan proceeds out of the bankruptcy estate, and that Irving Rosenbloom took a personal loan from the plan proceeds.

■ At the scheduled hearing, the debtors introduced into evidence the determination letters from the Internal Revenue Service indicating that the plan was a qualified plan pursuant to § 401 of the Internal Revenue Code. 26 U.S.C. § 401. Additionally, the debtors proffered James B. Davis, a certified public accountant and board certified tax lawyer, as an expert witness on pension plans. The witness was accepted as an expert by the Court and testified that, in his opinion, the plan is presently qualified under the applicable provisions of ERISA and the Internal Revenue Code. Based on the documentary evidence presented, and the testimony of the expert witness, this Court concluded that the amendments to the plan were administrative and did not affect the plan's qualified status.

■ As an additional basis for disqualifying the plan, the creditor argues in its memorandum of law that the plan lost its qualified status as a result of the filing of the bankruptcy petitions. The creditor rests the argument on private letter rulings issued by the Internal Revenue Service indicating that compliance with a trustee's demand for turnover of pension benefits by a pension plan constitutes a violation of the anti-alienation provisions of § 401 of the Internal Revenue Code thereby disqualifying the plan. *Private Letter Rulings*, 90–11037, December 20, 1989; 89–10035, March 10, 1989; 88–29009, April 6, 1988; 81–31020, May 5, 1981. The creditor submits that the trustee's interest in the

plan pending the resolution by this Court of the objection to the claimed exemption of the pension plan creates an illegal alienation and disqualifies the plan as of the date of the filing of the petitions.

█ The Court disagrees with the creditor's assertion. First, a bankruptcy court is not bound by the private letter rulings of the Internal Revenue Service. *In re Di Piazza,* 29 B.R. 916 (Bankr.N.D.Ill.1983); 26 U.S.C. § 6110(j)(3). Secondly, assuming the creditor's proposition, in an involuntary bankruptcy case a debtor's pension plan would face automatic disqualification as a result of the filing of the case by the petitioning creditors despite the fact that the debtor took no voluntary steps to alienate, encumber or assign the benefits or proceeds of the plan. The Court finds that accepting the creditor's proposition would lead to a harsh and unjust result in those instances. Therefore, the Court finds that the filing of a bankruptcy petition does not constitute an illegal alienation of the plan benefits so as to cause the plan to lose its ERISA qualified status.

█ The debtors contend that the plan is excepted from property of the bankruptcy estate. Under the Bankruptcy Code, property of the estate is defined as all property in which the debtor has a legal or equitable interest at the time of the filing of the petition. 11 U.S.C. § 541. However, the Bankruptcy Code excludes from property of the estate a debtor's interest in certain trusts. Specifically, § 541(c)(2) provides that:

> "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

11 U.S.C. § 541(c)(2). The effect of § 541(c)(2) is that a debtor's interest in a spendthrift trust enforceable under "applicable nonbankruptcy law," does not ever become property of the estate under § 541(a). *In re Majul,* 119 B.R. 118, 120 (Bankr.W.D.Tex.1990).

Because the plan is qualified under ERISA and the Internal Revenue Code, the debtors contend that the plan contains a restriction on the transfer of the plan benefits that is enforceable under nonbankruptcy federal law. The debtors rely on *In re Moore,* 907 F.2d 1476 (4th Cir.1990), wherein the Fourth Circuit Court of Appeals held that the "applicable nonbankruptcy law" language of § 541(c)(2) includes the federal law of ERISA. The *Moore* court drew particular reference to the language of § 541 and reasoned that the plain meaning of the words "applicable nonbankruptcy law" includes all laws, state and federal, under which a transfer restriction is enforceable. 907 F.2d at 1477.

The *Moore* court cited as examples other areas of the Bankruptcy Code where Congress used the term "applicable nonbankruptcy law" to refer to both federal and state law. Whether a disclosure statement contains adequate information is "not governed by any otherwise applicable nonbankruptcy law," which includes federal securities law. 907 F.2d at 1478 (citing *In re Stanley Hotel, Inc.,* 13 B.R. 926, 931 (Bankr.D.Col.1981)). Section 108(a) extends the time in which a trustee can pursue a cause of action which the debtor could have pursued in accordance with the tolling provisions of "applicable nonbankruptcy law," including the Racketeer Influenced and Corrupt Organization Act. 907 F.2d at 1478 (citing *In re Ahead By a Length, Inc.,* 100 B.R. 157, 162–63 (Bankr. S.D.N.Y.1989)).

Conversely, the Court also indicated that when Congress intended to refer exclusively to state law, it did so expressly. Therefore, the Court concluded that "if Congress had intended § 541(c)(2) to apply exclusively to spendthrift trusts as recognized under state law, then Congress would have employed the term 'spendthrift trust' in the statute rather than the phrase 'applicable nonbankruptcy law.'" *In re Ralstin,* 61 B.R. 502, 503 (Bankr.D.Kan.1986), *quoted in In re Moore,* 907 F.2d at 1478.

In *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985), the Eleventh Circuit Court of Appeals was faced with the same issue. In determining whether a debtor's plan benefits were excepted from the bankruptcy estate, the court was called upon to deter-

mine whether the "applicable nonbankruptcy law" language of § 541(c)(2) included federal law. The court determined, based on the legislative history to section 541, that the language referred only to state law concerning spendthrift trusts. *In re Lichstrahl*, 750 F.2d at 1490. The court cited the legislative history to section 541 which states that the Bankruptcy Code excludes from property of the estate "the debtor's interest in a spendthrift trust to the extent the trust is protected from creditors under applicable State law." H.R.Rep. No. 595, 95th Cong., 2d Sess. 176, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6136; S.Rep. No. 989, 95th Cong., 2d Sess. 83, *reprinted in* 1978 U.S.Code Cong., & Admin.News 5787, 5869, *quoted in In re Lichstrahl*, 750 F.2d at 1490, n. 3.

Although this Court finds the *Moore* opinion to be well reasoned, based on the binding authority of *Lichstrahl* this Court concludes that the "applicable nonbankruptcy law" language of § 541(c)(2) refers to state spendthrift trust law and does not include the federal law of ERISA. Therefore, the fact that the plan is ERISA qualified does not alone suffice to except the plan from property of the estate by operation of 11 U.S.C. § 541(c)(2).

The debtors also assert that the plan is exempt from property of the estate. Exemptions under bankruptcy law are determined by reference to intertwining provisions of the Bankruptcy Code and state law. *In re Martinez*, 107 B.R. 378 (Bankr. S.D.Fla.1989). Florida, under the authority of 11 U.S.C. § 522(b)(1), has opted out of the federal exemptions available under § 522 of the Bankruptcy Code. Fla.Stat. Ann. § 222.20 (West 1991). With respect to the exempt status of pension plan benefits, Florida Statute § 222.21(2)(a) provides as follows:

> Except as provided in paragraph (b), any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement or profit-sharing plan that is qualified under s.401(a), s.403(a), s.408, or s.409 of the Internal Revenue Code of 1986, as amended is exempt from all

> claims of creditors of the beneficiary or participant.

Fla. Stat. Ann. § 222.21(2)(a) (West 1991). Because the Court determined that the plan was qualified under the Internal Revenue Code and ERISA, the debtors assert that the plan is exempt under § 222.21.

■ The movants contend that the debtors may not claim the plan as exempt under Florida law in that Florida Statute § 222.21 is preempted by ERISA. Specifically, the movants rely on the United States Supreme Court decision of *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), wherein the Court held that ERISA preempted a Georgia statute preventing garnishment of a welfare benefit plan because the Georgia statute expressly referred to ERISA employee welfare benefit plans. The Court reasoned that specific reference to ERISA in a state law mandates preemption because of the rule that ERISA preempts any and all state laws in so far as they relate to any employee benefit plan covered by the statute. *Mackey*, 486 U.S. at 830, 108 S.Ct. at 2185. Because § 222.21(2)(a) "relates to" ERISA, the movants assert that the broad preemption language of ERISA prevents the application of the state law exemption. *In re Bryant*, 106 B.R. 727 (Bankr.M.D.Fla. 1989); *In re Schlein*, 114 B.R. 780 (Bankr. M.D.Fla.1990); *In re Sheppard*, 106 B.R. 724 (Bankr.M.D.Fla.1989).

The issue of ERISA's preemption of § 222.21(2)(a) is one that has been previously addressed by the bankruptcy courts of this district. *In re Bryan*, 106 B.R. 749 (Bankr.S.D.Fla.1989) (Britton, J.); *In re Martinez*, 107 B.R. 378 (Bankr.S.D.Fla. 1989) (Weaver, J.); *In re Gurvich*, 132 B.R. 976 No. 90–12037–BKC–AJC, slip. op. (Bankr.S.D.Fla. November 1, 1990) (Cristol, J.). The bankruptcy courts of this district have consistently held that the reference to ERISA in a state statute is insufficient to bring the state law within the preemption doctrine when the state law does not attempt to regulate the terms and conditions of an employee benefit plan. *See Martinez*, 107 B.R. at 380, *citing In re Volpe*,

100 B.R. 840, 846–55 (Bankr.W.D.Tex. 1989); *In re Bryan*, 106 B.R. at 750–51; *In re Gurvich*, 132 B.R. at 978. In *Martinez*, this Court reasoned that § 222.21(2)(a) is consistent with ERISA's purpose of protecting pension money from attachment by creditors. 107 B.R. at 380. Thus, the Court concluded that § 222.21(2)(a) and ERISA complement each other and absent a conflict between the state and federal law there is no need for preemption.

This Court sees no reason to retreat from the reasoning announced in *Martinez.* Therefore, the Court finds that Florida Statute § 222.21(2)(a) is not preempted by ERISA and the debtors have the right to claim the plan as exempt under Florida law.

■ The trustee also asserts that § 222.21(2)(a) is unconstitutional as violative of Article 10, Section 4 of the Florida Constitution. Article 10, Section 4 of the Florida Constitution covers exemptions and provides, in pertinent part, as follows:

SECTION 4. Homestead; exemptions-

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:

(2) personal property to the value of one thousand dollars.

Fla. Const. Art X, Sec. 4 (1985). The trustee contends that the Florida Constitution limits personal property exemptions to a value of $1,000.00 and that § 222.21 by exempting pension benefits in an unlimited amount, violates that constitutional provision. The trustee relies on the decision of *In re Hudspeth*, 92 B.R. 827 (Bankr. W.D.Ark.1988) which held a statute similar to § 222.21 as invalid under the Arkansas Constitution.

In *In re Wines*, 113 B.R. 787, this Court ruled upon a similar challenge to the constitutionality of Florida Statute § 222.14 which declares as exempt, without limitation as to dollar amount, the cash surrender value of insurance policies and annuities. Although in *Wines* the trustee and objecting creditor questioned the constitutionality of a different statute, the grounds asserted by the objectors in that case are the same being raised by the trustee in this instance.

In *Wines*, this Court held that Florida Statute § 222.14 was not violative of the Florida Constitution. Based on a historical analysis of the 1885 and 1968 Florida Constitutions, as well as the various exemption statutes promulgated by the Florida legislature, this Court concluded that " 'the organic provision exempting a stated amount of the general personal property of the insured *is not exclusive and is not a limitation* upon any and all statutory exemptions in property of any kind or nature.' " *Milam v. Davis*, 97 Fla. 916, 123 So. 668, 690, *cert. denied* 280 U.S. 601, 50 S.Ct. 82, 74 L.Ed. 646 (1929) *quoted in In re Wines*, 113 B.R. at 792. Similarly, the Court finds that the constitutional provision exempting a stated amount of personalty is not a limitation on the available exemption under Florida Statute § 222.21(2)(a).

Based on the foregoing, the Court finds that the debtors may properly claim the plan as exempt pursuant to Florida Statute § 222.21(2)(a). Accordingly, it is hereby:

ORDERED AND ADJUDGED that the trustee's and the creditor's objections to the debtors' claimed exemption of the plan are overruled.

DONE AND ORDERED.