**In re Felix Perez MAJUL and Ana Maria Majul, Debtors.**

**Bankruptcy No. 89–52662–RBK.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Aug. 27, 1990.

Edgar M. Duncan, J. Stephen Weakley, Maebius & Duncan, Inc., San Antonio, Tex., for debtors, Felix Perez Majul and Ana Maria Majul.

John Patrick Lowe, W. Patrick Dodson & Associates, P.C., Uvalde, Tex., trustee.

OPINION

RONALD B. KING, Bankruptcy Judge.

The questions in this case are whether the Chapter 7 Debtors' interest in two pension and profit sharing plans is property of the estate, and if so, whether it can be claimed as exempt property under a state exemption or "other federal law." This Court holds that the ERISA qualified pension and profit sharing plans at issue are spendthrift trusts under the provisions of ERISA and, therefore, the Debtors' interest in the pension plans is not property of the estate pursuant to section 541(c)(2) of the Bankruptcy Code. Alternatively, if the Debtors' interest in the pension plans is property of the estate, it may be claimed as exempt pursuant to section 522(b)(2)(A) of the Bankruptcy Code under "other federal law."

---

5. *Note, Property—Business Homesteads—Contig-* *uousness of Lots.* 21 Baylor L.Rev. 116 (1969).

## I.

### FACTS

Felix and Ana Majul, the Debtors in this case, are the beneficiaries of two pension and profit sharing plans (the "Plans") created through Dr. Majul's dentistry practice. The Plans were created in 1975 and funded during the next fourteen years by income from Dr. Majul's professional corporation, of which he is the sole shareholder and director. The trustees of the Plans were historically Dr. Majul, his wife and his father, although recently a bank has been named as the sole successor trustee of one of the Plans. The Plans were clearly created by a closely-held professional corporation of which the Debtor is the controlling shareholder, officer, and director. The Plans are qualified plans and contain spendthrift provisions pursuant to ERISA and the Internal Revenue Code.[1] As such, the facts closely resemble those in the cases of *In re Brooks*, 844 F.2d 258 (5th Cir.1988), and *In re Goff*, 706 F.2d 574 (5th Cir.1983).

The Chapter 7 Trustee, John Patrick Lowe, objected to the attempt by the Debtors to exclude their interest in the Plans from the estate under section 541(c)(2) of the Bankruptcy Code, or to claim it as exempt property under section 522(b) of the Bankruptcy Code. In the initial hearing, this Court sustained the Trustee's objections, following the bankruptcy court holding of *In re Dyke*, 99 B.R. 343 (Bankr. S.D.Tex.1989), *rev'd*, 119 B.R. 536 (S.D.Tex. 1990). A rehearing was granted in order to reexamine the prior holding based upon *Dyke*, which was reversed by the district court on appeal, and to consider United States Supreme Court, courts of appeals and bankruptcy court case law decided after *Goff* and *Brooks*.

## II.

### PREEMPTION

A. State exemption statute.

■ Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a) (1988). The Supreme Court of the United States has held in *Mackey v. Lanier Collections Agency & Serv., Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), that all state laws which "relate to" an employee benefit plan are preempted under section 514(a). This provision has been discussed in a number of recent cases, many of which hold that attempts by states to create a statutory exemption of ERISA qualified plans are invalid as being preempted by the broad reach of ERISA. *E.g., In re Komet*, 104 B.R. 799 (Bankr.W.D.Tex.1989); *In re Starkey*, 116 B.R. 259 (Bankr.D.Colo.1990); *contra, In re Volpe*, 100 B.R. 840 (Bankr. W.D.Tex.1989), *aff'd*, 120 B.R. 843 (W.D. Tex.1990). This Court agrees that such laws are preempted by ERISA. The Plans are, therefore, not exempt under Tex.Prop. Code Ann. § 42.0021 (Vernon Supp.1990).

B. What hath *Goff* wrought?

The issues to be decided in this case are whether the preemptive reach of ERISA also extends to state law relating to spendthrift trusts, and whether "applicable non-bankruptcy law" includes ERISA. Section 206(d)(1) of ERISA expressly requires that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1) (1988). *Goff* is one of the earliest cases which discussed this issue and decided that ERISA's anti-alienation provisions do not operate by their own force to shelter pension funds in bankruptcy. The court in *Goff* determined that a restriction on transfer of a beneficial interest in a trust enforceable under "applicable non-bankruptcy law" as used in section 541(c)(2) of the Bankruptcy Code refers only to a restriction enforceable under *state* law relating to spendthrift trusts. *Goff* reasoned that under Texas law, a

---

1. 29 U.S.C. § 1001, *et seq.* (1988) (referred to herein as "ERISA"); 26 U.S.C. § 401(a)(13)(A) (1988). 11 U.S.C. § 101, *et seq.* (1988), is referred to herein as the "Bankruptcy Code."

spendthrift trust does not include a "settlor trust" in which a person attempts to shield his own assets from the claims of creditors in a revocable trust for his own benefit. Therefore, the self-settled ERISA plan at issue in *Goff* was held to be property of the estate under section 541(c)(2) of the Bankruptcy Code.

The premise that "applicable nonbankruptcy law" refers only to state spendthrift trust law rather than ERISA, supported chiefly by the citation to legislative history, was the entire foundation for the holding in *Goff* that a qualified pension plan is property of the estate if it is a self-settled trust under state law. Although *Goff* contained a careful analysis constructed on that premise, this Court disagrees with that basic premise and believes that in light of subsequent opinions by the United States Supreme Court, the Court of Appeals for the Fourth Circuit, and district and bankruptcy courts, the premise is incorrect and undermines the force of the *Goff* holding. Although *Goff* was reexamined in *Brooks*, the court in *Brooks* did not independently review the issue or cite additional authority in support of the premise that ERISA qualified pension plans, which may be settlor trusts under state law, do not qualify for the exclusion from property of the estate under section 541(c)(2) of the Bankruptcy Code.

### 1. Exclusion versus exemption.

■ Many recent cases which discuss the protection of pension plans against the claims of creditors use the term "exemption" in an imprecise fashion. Two separate concepts must be clearly articulated in framing the issue. First, section 541(c) of the Bankruptcy Code provides as follows:

Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c) (1988). The effect of section 541(c) of the Bankruptcy Code is that the debtor's interest in a spendthrift trust, enforceable under "applicable nonbankruptcy law," does not ever become property of the estate under section 541(a) of the Bankruptcy Code. As such, the trustee and the creditors have no claim to such property because it never enters the bankruptcy system. *Goff*, 706 F.2d at 579.

In contrast to an *exclusion* from property of the estate, section 522 of the Bankruptcy Code allows the debtor to *exempt* certain property from the estate. Section 522(b) provides:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. . . .

11 U.S.C. § 522(b) (1988). Thus, property which a debtor is entitled to exempt does enter the bankruptcy system as property of the estate, but the debtor is allowed to attempt to exempt such property under the provisions of section 522 of the Bankruptcy Code. Although the effect may be similar, the concepts are entirely distinct. If property is excluded from "property of the estate," it is obviously unnecessary to exempt such property under section 522. If the property is property of the estate under section 541 of the Bankruptcy Code, then in that event, the debtor may have the opportunity to claim an exemption of the property under section 522 of the Bankruptcy Code.

*2. ERISA's preemptive bar to alienation or assignment.*

The principal issue in *Goff* was whether the Keogh plan was property of the estate under section 541(c)(2).[2] *Goff* concluded "that ERISA's anti-alienation provisions do not operate by their own force to shelter pension funds in bankruptcy." *Goff,* 706 F.2d at 577. Implicitly, *Goff* held that ERISA does not preempt state law relating to spendthrift trusts. Based upon cases decided after *Goff* and *Brooks,* this Court disagrees with that conclusion.

One of the most recent statements by the United States Supreme Court relating to the requirement that ERISA pension plans contain spendthrift provisions is found in *Guidry v. Sheetmetal Workers Nat'l Pension Fund,* —— U.S. ——, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). In *Guidry,* the United States Supreme Court decided that the trustee of a labor union pension plan, who admittedly had embezzled funds from his labor union, was still protected by the ERISA prohibition on the assignment or alienation of pension benefits. The Court overturned a judgment imposing a constructive trust on Guidry's pension benefits, and in so holding, stated:

> Nor do we think it appropriate to approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits.
>
> Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.
>
> . . . .
>
> Understandably, there may be a natural distaste for the result we reach here. The statute, however, is clear. In addi-

tion, as has been noted above, the malefactor often is not the only beneficiary of the pension.

110 S.Ct. at 687–688 (footnotes omitted).

In *Mackey v. Lanier Collections Agency & Service,* the Supreme Court of the United States considered the preemption issue as to whether ERISA preempts state laws that may relate to employee benefit plans. In deciding that the Georgia general garnishment statute was not preempted as it related to ERISA *welfare* benefit plans, the Court made several general statements regarding the anti-alienation or spendthrift provisions required by ERISA. For example:

> Specifically, ERISA § 206(d)(1) bars (with certain enumerated exceptions) the alienation or assignment of benefits provided for by ERISA *pension* benefit plans. 29 U.S.C. § 1056(d)(1). Congress did not enact any similar provision applicable to ERISA *welfare* benefit plans, such as the one at issue in this case.
>
> . . . .
>
> Section 206(d)(1) bars the assignment or alienation of pension plan *benefits,* and thus prohibits the use of state enforcement mechanisms only in so far as they prevent those benefits from being paid to plan participants.
>
> . . . .
>
> Ultimately, in examining §§ 206(d)(1) and 514(a) there is no ignoring the fact that, when Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans, and *not* ERISA welfare benefit plans.

108 S.Ct. at 2188–2189 (emphasis in original). The above quotations from *Guidry* and *Mackey,* although not specifically addressing the issues in this case, indicate the broad construction placed by the United States Supreme Court upon section 206(d) of ERISA, treating it as a policy prohibition against assignment or alienation of pension

---

**2.** Although the issue was not raised by the parties, *Goff* also undertook to discuss the issue of whether the debtors could exempt the Keogh plan under section 522 of the Code. *Goff,* 706 F.2d at 582.

benefits, rather than merely a requirement for ERISA qualification.

ERISA's bar against alienation has generally been held to prevent creditors from reaching pension benefits. *Guidry*, 110 S.Ct. at 687; *Mackey*, 108 S.Ct. at 2188–2189; *United Metal Prods. Corp. v. National Bank of Detroit*, 811 F.2d 297, 299–300 (6th Cir.1987), *cert. dismissed*, 485 U.S. 1017, 108 S.Ct. 1494, 99 L.Ed.2d 879 (1988); *Ellis Nat'l Bank of Jacksonville v. Irving Trust Co.*, 786 F.2d 466 (2d Cir.1986); *Smith v. Mirman (In re Mirman)*, 749 F.2d 181, 183–184 (4th Cir.1984); *Tenneco, Inc. v. First Virginia Bank of Tidewater*, 698 F.2d 688, 689–690 (4th Cir.1983); *General Motors Corp. v. Buha*, 623 F.2d 455, 460–463 (6th Cir.1980); *Commercial Mortgage Ins. Inc. v. Citizens Nat'l Bank of Dallas*, 526 F.Supp. 510, 516–523 (N.D.Tex. 1981). In *Mirman*, the Chapter 7 trustee attempted to set aside purported pre-bankruptcy assignments of the debtor's interest in an ERISA pension plan. The attempted assignments were made prior to the distribution of ERISA benefits under the plan to the beneficiaries upon termination of the plan. The Fourth Circuit held that the trustee could not reach the debtor's pension benefits because of the anti-alienation provisions of ERISA and the pension plan. The court stated:

> We see a danger in eroding through exception the anti-alienation policy of ERISA. That entire legislation was aimed at guaranteeing the security of retirement income for American workers. This was achieved primarily through the vesting and funding requirements, but the additional safeguard of non-alienability of one's plan interest is no less important. We decline to participate in the diminution of these safeguards in circumstances which might seem harmless enough in particular instances but which, in the aggregate, might invite creditors to believe that ERISA funds are not, after all, inviolate.

749 F.2d at 184.

### 3. Applicable nonbankruptcy law.

Despite the general ERISA requirement of non-alienability, *Goff* and its progeny decided that the phrase "applicable nonbankruptcy law" refers only to state spendthrift trust law and does not include the restriction on alienability contained in ERISA. The reasoning in *Goff* was based primarily upon a discussion of the legislative history of the Bankruptcy Code, as well as the apparent inconsistency in creating an exemption under section 522(b)(10)(E) of the Bankruptcy Code for pension plans. In other words, if ERISA qualified pension plans were not property of the estate under section 541(c)(2), it would be unnecessary for Congress to create an exemption for them under section 522(d)(10)(E).

The *Goff* reasoning has been specifically rejected in the recent case of *Anderson v. Raine (In re Moore)*, 907 F.2d 1476 (4th Cir.1990). In *Moore*, the bankruptcy trustee claimed that a plan which was not a spendthrift trust under South Carolina law should be included within property of the estate under section 541(c)(2) of the Bankruptcy Code, despite the plan being ERISA qualified. The Fourth Circuit affirmed the holdings of the bankruptcy court and the district court that the debtors' interest in the ERISA pension plan was not property of the estate. The Fourth Circuit stated:

> We reject the trustee in bankruptcy's overly restrictive interpretation of § 541(c)(2) and hold that the term "applicable nonbankruptcy law" is not limited to state spendthrift trust law. In light of this disposition, we need not reach the question of whether the plan constitutes a spendthrift trust under South Carolina law.
>
> . . . .
>
> "Applicable nonbankruptcy law" means precisely what it says: all laws, state and federal, under which a transfer restriction is enforceable. Nothing in the phrase "applicable nonbankruptcy law" or in the remainder of § 541(c)(2) suggests that the phrase refers exclusively to state law, much less to state spendthrift trust law.
>
> . . . .
>
> We acknowledge that several circuit courts have read the term "applicable

nonbankruptcy law" in § 541(c)(2) narrowly to refer only to state spendthrift trust law.... Because we believe this legislative history to be irrelevant and in any event inconclusive, we respectfully decline to follow this course.

907 F.2d at 1477–1478 (citations omitted). The Fourth Circuit further stated that the legislative history was, at best, cloudy, and that Congress knows the difference between "state law" and "applicable nonbankruptcy law." [3] This Court agrees with *Moore*.[4]

### 4. Harmony of federal statutes.

*Moore* also discusses harmonizing federal statutes rather than construing them to be in conflict. A harmonious construction of 541(c)(2) and ERISA led the court in *Moore* to determine that the debtors' interest in the ERISA qualified pension plan was excluded from their estate under "applicable nonbankruptcy law" in section 541(c)(2) of the Bankruptcy Code. This result is not only consistent with ERISA's non-alienability provisions, which prevent garnishment or attachment of ERISA pension plan interests prior to bankruptcy, but also prevents circumvention of this restriction by inviting creditors to push a debtor into involuntary bankruptcy in order to reach his ERISA funds.[5] In addition, construing ERISA and section 541(c)(2) of the Bankruptcy Code in harmony would further the purpose of uniform treatment of pension benefits throughout the United States. Otherwise, a state which did not recognize spendthrift trusts could nullify the anti-alienation provisions of ERISA in contravention of ERISA's general preemption scheme. *Moore*, 907 F.2d at 1480; *see PPG Indus. Pension Plan A v. Crews*, 902 F.2d 1148, 1150–1151 (4th Cir.1990).

The alleged inconsistency between excluding spendthrift trusts from property of the estate under section 541(c)(2), and the exemption of certain pension plans under section 522(b)(10)(E), is not a valid basis to conclude that Congress intended to include self-settled ERISA pension benefits in the bankruptcy estate of a beneficiary. *See Goff*, 706 F.2d at 582, n. 20; *Dyke*, 99 B.R. at 346. As best stated by the district court in *In re Threewitt*:

Section 522(d)(10)(E) exempts the right to receive payments necessary for support from a wide range of sources, *tax-qualified or not*, including, for example, Christmas stock bonuses paid upon 25 years of service, or profit-sharing plans restricted to senior employees, or an annuity purchased to provide income to a worker disabled in an industrial accident. The Court does not consider it remarkable that Congress did not bother to further complicate an already complex code by taking pains to insure that there was no overlap between Section 522(d)(10)(E) and Section 541(c)(2).

*In re Threewitt*, 24 B.R. 927, 930 (D.Kan. 1982) (footnote omitted, emphasis in original). This Court agrees that the possible overlap of exemptions in section 522(d)(10)(E) and exclusion in section 541(c)(2) does not evidence a congressional intent to include ERISA pension benefits in property of the estate.

Finally, harmonization of section 541(c)(2) of the Bankruptcy Code and ERISA prevents the possibility of a bankruptcy trustee attempting to reach the benefits of one beneficiary of a pension plan, and simultaneously disqualifying the entire plan from tax-exempt status under 26 U.S.C. § 401(a)(13), to the extreme detriment of

---

**3.** *E.g.,* 11 U.S.C. § 109(c)(2) ("organization empowered by State law"); 11 U.S.C. § 522(b)(1) & (2) (exemptions tied to "State law that is applicable"); 11 U.S.C. § 523(a)(5) (nondischargeability of debt for support pursuant to an order "made in accordance with State or territorial law").

**4.** *In re Threewitt*, 24 B.R. 927 (D.Kan.1982); *In re Ralstin*, 61 B.R. 502 (Bankr.D.Kan.1986); and *In re Mosley*, 42 B.R. 181 (Bankr.D.N.J.1984), were also cited by *Moore*.

**5.** It also seems incongruous that an imprisoned embezzler in *Guidry* received protection of his pension plan benefits, while an innocent, but insolvent, debtor in bankruptcy would not receive the ERISA anti-alienation protection. Surely Congress did not intend, and the United States Supreme Court would not permit, such inconsistent results in light of ERISA's policy objectives.

innocent pension beneficiaries.[6] *Moore,* 907 F.2d at 1480; *McLean v. Central States, S.E. & S.W. Areas Pension Funds,* 762 F.2d 1204, 1206 (4th Cir.1985) (payment of ERISA funds to Chapter 13 bankruptcy trustee may cause plan to lose its ERISA qualification and tax-exempt status).

### 5. Conclusion.

■ Because the preemptive reach of ERISA extends to state spendthrift trust law, the non-alienation provisions of ERISA are enforceable despite state spendthrift trust law to the contrary. In addition, the Bankruptcy Code and ERISA can best be harmonized by the construction of the phrase "applicable nonbankruptcy law" contained in section 541(c)(2) to include the ERISA policy prohibition against the alienation of pension benefits. It is the holding of this Court that if a pension plan is qualified under ERISA and 26 U.S.C. § 401(a)(13), ERISA bars alienation of the benefits. For these reasons, based upon recent case law, this Court respectfully disagrees with the holdings of *Goff* and *Brooks,* and holds that ERISA qualified pension plans, even if they would be settlor trusts under state spendthrift trust law, are not included within "property of the estate."

### III.

### EXEMPTION

■ In the event that the plans in this case are considered to be property of the estate for any reason, this Court would further join the growing trend of authority and hold that the Debtors may exempt their interest in the Plans under the "other federal law" exception contained in section 522(b)(2)(A) of the Bankruptcy Code. This Court follows the cases led by *In re Komet,* 104 B.R. 799 (Bankr.W.D.Tex.1989), in not following the strong dicta in *Goff.* Therefore, if the Debtors' interest in the Plans is property of the estate, they are entitled to exempt their interest in the Plans pursuant to section 522(b)(2)(A).

This opinion shall constitute the findings of fact and conclusions of law of this Court pursuant to Bankruptcy Rule 7052. An Order Denying the Trustee's Objections will be rendered contemporaneously herewith.

---

**6.** Innocent pension beneficiaries may include the debtor's own family. As stated in *Guidry:* "Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless)...." 110 S.Ct. at 687.