**In re Horacio R. SUAREZ, 261–96–6730 and Eladia F. Suarez, 261–96–6731, Debtors.**

**Bankruptcy No. 90–18947–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

May 1, 1991.

Brad I. Schandler, Coral Gables, Fla., for debtors.

Jeffrey Rubenstein, Rubenstein & Kornik, P.A., Miami, Fla., for Sun Bank.

## ORDER DENYING CREDITOR'S OBJECTIONS TO EXEMPT PROPERTY

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE came on before the Court for hearing on March 20, 1991, upon the Objections to Exempt Property of the Debtors filed by a Creditor of the estate, and the Court, having heard argument of counsel, and being otherwise fully advised in the premises, makes the following rulings:

1. It was the position of Sun Bank/Miami, N.A., a secured creditor of the debtors, Dr. Horacio R. Suarez, and Eladia F. Suarez, that the Creditor's Objection to the Debtors' Claim of Exempt Property should be sustained for the following reasons:

A. Generally speaking, § 541(c) of the Bankruptcy Code, (11 U.S.C.A. § 541), provides that all property of the debtors is includable in their Estate.

B. The Debtors, in Schedule B–4, of the Petition for Relief, claimed as exempt property, pursuant to § 522(b)(1) of the Code, and Florida Statute §§ 222.20, and 222.21, the following:

1. I.R.A. Accounts with an estimated value of $7,183.00 presently held with Sun Bank/Miami, N.A.; and

2. Keogh Retirement Accounts with an estimated value of $88,642.86 pres-

ently held with Sun Trust SEC Inc.—Miami,

C. Prior to October 1, 1987, F.S. § 222.21 was not effective to exempt qualified ERISA plans from the claims of creditors.

D. Sun Bank/Miami, N.A., a secured creditor, filed its Objection to Debtors' Claims of Exempt Property, and Proofs of Claim, on the basis that the above-described property is in fact, not exempt property, and is therefore property of the bankruptcy estate, citing as grounds:

1. Under the doctrine of Federal Pre-emption, as set forth in the United States Supreme Court case of *John H. Mackey v. Lanier Collections Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the subject matter of ERISA type plans has been pre-empted by the federal legislation, and therefore, any State statute dealing with that subject matter is invalid and unenforceable. Additional authorities relied upon by the creditor were the opinions of Judge Paskay, Chief Judge, *In re Sheppard*, 106 B.R. 724 (Bkrtcy.M.D.Fla.1989), and *In re Bryant*, 106 B.R. 727 (Bkrtcy.M.D.Fla.1989). In those opinions, Chief Judge Paskay has ruled that because of its express reference to the Internal Revenue Code provisions codifying ERISA, 11 U.S.C.A. § 1144, the Exemption Statute, F.S. § 222.21, "relates to" ERISA and is pre-empted by federal law. The Middle District has denied claims that plan benefits are exempt property of a debtor, and repeatedly has treated such plans as property of the bankruptcy estate. *In re Watson*, 13 B.R. 391 (Bkrtcy.M.D.Fla. 1981), *In re Nichols* 42 B.R. 772 (Bkrtcy.M.D.Fla.1984), *In re Schlein* 114 B.R. 780 (Bkrtcy.M.D.Fla.1990), *In re Gardner* 118 B.R. 860 (Bkrtcy.M.D.Fla.1990), *In re Martin* 119 B.R. 297 (Bkrtcy.M.D.Fla.1990), *In the Matter of Lee* 119 B.R. 833 (Bkrtcy.M.D.Fla.1990), *In re Komet* 93 B.R. 498 (Bkrtcy.W.D.Tex.1988).

2. With respect to the I.R.A. accounts, pursuant to the decision of *In re Flindall*, 105 B.R. 32 (Bkrtcy.Ariz.1989), a bankruptcy court in Arizona held the state's exemption statute to be pre-empted in its entirety, even with respect to I.R.A.'s. The *Flindall* decision stands for the proposition that even I.R.A.'s are included within the pre-emption of our state statutes created for ERISA-qualified plans by *Mackey*. Before the effective date of 222.21, 10/1/87, even Judges in the Southern District of Florida had ruled these types of plans were not exempt. *In re Gillett*, 46 B.R. 642 (Bkrtcy.S.D.Fla.1985). See also *In re McDonald*, 100 B.R. 598 (Bkrtcy.S.D.Fla.1989) and *In re Gherman*, 101 B.R. 369 (Bkrtcy. S.D.Fla.1989).

3. Further, under the creditor's position was that the subject assets were not subject to the doctrine of exclusion as a spendthrift trust under § 541(c)(2) of the Code, in accordance with the general rule that no self-settled trust can qualify as spendthrift when the settlor is also the beneficiary. It was the creditor's position that the debtors' retirement plans will not qualify as a spendthrift trust as to a participant because the participants have *dominion and control* over the retirement plan benefits. *In re Lichstrahl*, 750 F.2d 1488 (11th Cir., C.A.1985), a case arising out of the Southern District of Florida. Accordingly, by definition, and according to the Keogh plan the Debtor adopted, a retirement plan of a sole proprietorship business cannot qualify as a spendthrift trust because of the control which the owner/participant, the Debtor in this case, necessarily has over the plan and the funds invested in it. At all times, the debtor has the ability to reach the proceeds even if to do so would mean to terminate the plan, and at all times, the debtor has the ability to borrow against, and manipulate the funds. Dr. Suarez had, and now his wife, as beneficiary, has dominion and control over the plan, because he was the sole employer and the sole employee, and therefore he retained the right to amend, modify, or revoke the plan at any time. In fact, the Debtors have already applied for a distribution of funds from Kemper, prior to this Court's ruling on our objections.

E. As additional ground for Objecting to the Debtors' claim of exempt property, the Creditor claimed that the application of

Florida Statute § 222.21 to the following facts of this case constituted an unconstitutional impairment of pre-existing contract rights, under Article 1 § 9 & § 10 of the U.S. Constitution, and Article 1 § 10 of the Florida Constitution.

F. In support of this position, Sun Bank points out that it first loaned this money to the Debtors in 1983. There were annual renewals thereafter. Mrs. Suarez first guaranteed payment in 1987. The Promissory Note, Exhibit 10 to the Rule 2004 examination of Mrs. Suarez, which is marked "RENEWAL OF MASTER NOTE # 52019", in the original principal amount of $65,000.00, dated September 30, 1987, (the day before the effective date of the Statute in question), provides, *inter alia,*

> Bank is hereby given a lien upon and a security interest in all property of each Maker now or at any time hereafter in the possession of Bank in any capacity whatsoever, including but not limited to any balance or share of any deposit, trust, or agent account as security for the payment of this note, and a similar lien upon and security interest in all such property of each Maker as security for the payment of all other liabilities of each Maker to Bank ...

The financial statement given to Sun Bank, Exhibit 8 to the Rule 2004 examination of Mrs. Suarez, which Financial Statement is dated September 22, 1987, (which is eight (8) days prior to the effective date of Florida Statute § 222.21), and signed by both of the Debtors as an inducement to renew the indebtedness at that time provides, *inter alia:*

ACKNOWLEDGEMENT OF SPOUSE

> I HEREBY ACKNOWLEDGE that the information contained in Schedules A through F to this Personal Financial Statement is true and correct to the best of my knowledge. Any interest I may have or hereafter acquire in the assets designated therein as being individually owned by my spouse is hereby subordinated to you for any indebtedness owing to you directly or indirectly by my spouse.

s/ Eladia H. Suarez

9/22/87

The information contained in this statement is provided for the purpose of obtaining, or maintaining credit with you on behalf of the undersigned, or persons, firms or corporations in whose behalf the undersigned may either severally

or jointly with others, execute a guarantee in your favor. Each undersigned understands that you are relying on the information provided herein (including the designation made as to ownership of property) in deciding to grant or continue credit. Each undersigned represents and warrants that the information provided is true and complete and that you may consider this statement as continuing to be true and correct until a written notice of change is given to you by the undersigned.

s/ Horacio R. Suarez, M.D.

s/ Eladia H. Suarez

Date Signed 9/22/87

The financial statement specifies the I.R.A. and Keogh accounts in question, and it is the position of Sun Bank that at that point in time, September 22, 1987, those assets were not exempt property, based upon the 1978 Florida Supreme Court case of *Dewberry v. Auto–Owners Insurance Company,* 363 So.2d 1077 (1978), wherein the Court stated, "The citizens of this State cannot be charged reasonably with notice of the consequences of impending legislation before the effective date of that legislation, for it is generally accepted that a statute speaks from the time it goes into effect." *Dewberry,* at page 1080. Florida Statute § 221.21 went into effect on October 1, 1987. Due to the fact the debt at issue was created prior to the effective date of the statute, and because F.S.A. § 222.21 became effective after Sun Bank had loaned the money here at issue to the Debtors based on their financial statement under which the I.R.A. Accounts and the Keogh Retirement Accounts were at that point in time not exempt property, and one source of funds to which Sun Bank had

recourse, especially as custodian, those assets were held by Sun Bank as security for repayment of the debt, and because the Bank looked to those funds, in part, as a source of repayment of the debt in the event of a default by the Debtors, the application of § 221.21 to the facts of this case, according to Sun Bank, is an unconstitutional ex-post facto, retroactive impairment of their contract rights. In that the date of the debt predates the effective date of the statute, the Bank position is that it would be unconstitutional for this Court, or any court, to apply § 221.21 retroactively to defeat its rights of setoff against these funds.

Article 1 § 9 & § 10 of the U.S. Constitution, and Article 1 § 10 of the Florida Constitution both stand for the proposition that no law impairing the obligation of contracts shall be passed." It is the Bank's position, that as a result of the enactment of the new statute, if it is applied to these facts, there is a changing of the substantive rights of the parties to existing contracts, which is not permitted under our constitutional form of government. It is the position of the Bank that the debt in question is the same debt which has been in existence, with some reductions and advances, since 1983, based upon the fact that the debt always contained the same Master Note and account number, and that under Florida law, there was no new contract in as much as no new documentary *stamps* are required upon the renewal of a debt.

Upon consideration of all of the above and foregoing, the Court rejects each of the arguments of Sun Bank, and overrules the Objections to the Debtors' claims of exempt property for the following reasons:

## I

### EXEMPTION PREEMPTION

1. The Debtors' I.R.A. and Keogh Retirement Accounts are exempt.

■ a. Florida Statute § 222.21(2)(a) provides that:

... any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement or profit-sharing plan that is qualified under s. 401(a), s. 403(a), s. 408, or s. 409 of the Internal Revenue Code of 1986, as amended, is exempt from all claims of creditors of the beneficiary or participant.

Where as here, the objecting party has not questioned, or presented any evidence contesting, the qualified status of the Debtors' plan, the Courts of this District have held that:

... the plan meets the requirements to classify as an ERISA-qualified plan under Florida State law and is exempt under Section 522(b)(A) since Florida State law provides for that exemption under Fla.Stat. Section 222.21(2)(a).

*In re Martinez* 107 B.R. 378 (Bkrtcy.S.D. Fla.1989). As stated in *Killian v. Lawson* 387 So.2d 960 (Fla.1980), quoted by Judge Weaver in *In re Seilkop* 107 B.R. 776 (Bkrtcy.S.D.Fla.1989). "exemption statutes.... should be liberally construed in favor of a debtor so that he and his family will not become public charges." *Seilkop*, at 778. Accordingly this Court finds, as in *Seilkop* and *Martinez*, that the Debtors' Keogh and I.R.A. benefits are exempt.

■ 2. The Creditor next argues that F.S. § 222.21 is preempted by the Employee Retirement Income Security Act (ERISA) under the authority of *Mackey v. Lanier Collections Agency and Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). *Mackey* involved a conflict between a Georgia State law and ERISA. The Georgia statute in question in *Mackey* sought to protect welfare benefits from garnishment even though they were not specifically protected from garnishment under ERISA.

The State law in Georgia provided that ERISA welfare benefit plans were to receive different treatment under the State garnishment statute, providing that they were protected from garnishment. The Georgia and United States Supreme Court held that the Georgia state law was in conflict with the ERISA Act and was therefore preempted by it.

78

In the present case however, there is no conflict between state law and ERISA, accordingly, there is no need for the application of the preemption doctrine. Here, as held in *Martinez:*

> ... unlike the State law involved in *Mackey* which sought to impose a different result than ERISA, F.S. 222.21(2)(a) is consistent with ERISA's purpose of protecting pension money from attachment of creditors.

> ... but it does not regulate, directly or indirectly any matters dealing with ERISA's plan reporting, disclosure, participation, funding, vesting, benefit calculation or trustee's fiduciary responsibilities. Fla.Stat. Section 222.21(2)(a) covers an area of law traditionally governed by the states and does not interfere with the field of employee pension plans now governed by federal law.

Therefore, although ERISA may preempt those state laws which attempt to regulate pension plans or change the underlying pension plans or change the underlying purpose of ERISA it does not preempt Fla.Stat. Section 222.21(2)(a). Instead, the Court finds that Fla.Stat. Section 222.21(2)(a) complements ERISA's purpose in seeking to protect pension money from creditors and, therefore, absent a conflict between the state and federal law there is no need for pre-emption as expressed in *In re Volpe,* 100 B.R. [840] at 847–848. [ (Bkrtcy.W.D.Tex.1989) ]

■ 3. In addition to F.S. § 222.21, Debtors amended their petition to claim the I.R.A. and Keogh accounts exempt pursuant to F.S. § 222.201. That statute makes exempt property of the type described in 11 U.S.C. Section 522(d)(10)(E), which exempts:

> a payment under a pension, or similar plan on account of illness, disability, death, age, or length of service to the extent reasonably necessary for the support of the Debtor and any dependent of the debtor, ...

In this case, the Debtor qualifies for an exemption pursuant to the U.S.C. § 522(d)(10)(E) and has the present right to receive payments from the plan.

Debtor Horacio R. Suarez died on December 14, 1990, leaving Debtor Eladia F. Suarez as his surviving spouse and beneficiary. Debtor Eladia F. Suarez is retired and unemployed. Her sole means of support, aside from the payments she would receive under the I.R.A. and Keogh plans, is a social security income, which alone, would not meet the Debtor's minimum support requirements. With the payments she would receive from the I.R.A. and Keogh plans, however, Debtor Eladia Suarez would receive an amount reasonably necessary to support herself. Accordingly, the Court, following the reasoning of the Court in *In re Thompson* 103 B.R. 205 (Bkrtcy. W.D.Mo., 1989) holds:

> ... that debtor's interest in such fund is reasonably necessary for the support of debtor and that to strip (her) of (her) only substantial asset would in effect deny (her) the "fresh start" envisioned by Congress. Id. at 206, 207.

In so deciding, this Court is mindful of the House Report on H.R. 8200, which states that:

> The historical purpose of ( ) exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge. (This) purpose has not changed....

H.R.Rep. No. 595, 95th Cong., 1st Sess. 126 (1977) reprinted in 1978 U.S.Code Cong. & Ad.News, 5787, 5963, 6087.

> The exemption of present Keogh payments to the extent they are necessary for the support of the debtor, is consistent with this goal.

*In re Clark* 711 F.2d 21 (3rd Cir.1983).

II

DEBTORS' KEOGH & IRA FUNDS ARE EXCLUDED FROM THE BANKRUPTCY ESTATE

■ Were this Court not to have determined that the funds in the Keogh and

I.R.A. plans were exempt, the Debtors still would be granted relief on three other grounds. First, as to the treatment of funds in the Debtors' I.R.A. accounts under ERISA:

> Even a cursory examination of Section 514(a) leaves no doubt that its preemption provision is not applicable to IRA accounts. For instance, an individual who establishes an IRA for himself is not necessarily an employer or an employee organization. In addition, ERISA expressly excludes IRAs from its coverage. 29 U.S.C.A. Section 1051(6) (West 1985).

*In re Ewell* 104 B.R. 458 (Bkrtcy. M.D. Fla.1989). In the *Ewell* case the Middle District of Florida Court held that

> ... IRAs established under Section 408(a) of the Internal Revenue Code of 1986 are outside of the preemptive scope of ERISA. Thus, Fla.Stat. Section 222.-21 is not preempted by ERISA as it relates to IRAs. Id at 461.

■ Secondly, the funds in the Keogh account are exempt from the bankruptcy estate as ERISA is "other federal law" within the meaning of Bankruptcy Code Section 522(b)(2).

Florida has elected to opt out of the federal bankruptcy exemptions with the exception of the provisions of Florida Statute § 222.201. The Debtor is nevertheless entitled to exempt from creditors of the bankruptcy estate any property that is exempt under federal law other than the federal bankruptcy exemption of Bankruptcy Code Section 522(d). If ERISA Section 206(d)(1) is a federal exemption, the debtor may protect a pension plan from creditors of the bankruptcy estate pursuant to Bankruptcy Code Section 522(b).

In *In re Komet,* 104 B.R. 799 (Bkrtcy.W. D.Tex.1989) the Court concluded that ERISA is an exemption under Bankruptcy Code Section 522(b)(2) as "other federal law". The analysis and conclusions of the *Komet* Court have been endorsed and favorably received by other Courts since its issuance.

The Court in *In re Majul* 119 B.R. 118 (W.D.Tex.1990) also held that:

> ... the Debtors may exempt their interest in the plans under the "other federal law" exception contained in Section 522(b)(2)(A) of the Bankruptcy Code. *Id. at 124.*

Two recent Supreme Court decisions support the statutory construction and analysis in *Komet* and *Majul.* In *U.S. v. Ron Pair Enterprises, Inc.* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the Court set forth the process for resolving a dispute over the meaning of a statute. The Court stated:

> The task of resolving the dispute begins where all such inquiries must begin: with the language of the statute itself. In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." The language before us expresses Congress' intent ... with sufficient precision so that reference to legislative history and to pre-Code practice is hardly necessary.

489 U.S. at 241, 109 S.Ct. at 1030 (citations omitted). This same analysis arguably should apply to the meaning of Bankruptcy Code Section 522(b)(2)(A).

Later in *Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), the Court held that the anti-alienation provision found in Section 206(d)(1) of ERISA precluded without exception, the garnishment or other alienation of ERISA plan benefits.

> The Court analogized Section 206(d)(1) with other federal provisions prohibiting garnishment of retirement benefits, the Social Security Act ... the Railroad Retirement Act ... the Civil Service Retirement Act ... and the Veteran's Benefits Act ... As the Court said, Section 206(d)(1) is "consonant with other statutory provisions designed to safeguard retirement income," 493 U.S. at ——, 110 S.Ct. at 685, and "reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others

from securing relief for the wrongs done to them ... As a general matter, courts should be loathe to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text." 493 U.S. at ——, 110 S.Ct. at 687. Given that these other statutes cited by the Court consistently have been recognized as available under 11 U.S.C. Section 522(b)(2)(A) to exempt similar property rights, the decision casts a doubt on the holding in *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985), that ERISA Section 206(d)(1) is not an exemption available under federal law available to a debtor pursuant to 11 U.S.C. 3522(b)(2)(A) and suggests that the reasoning in *In re Komet,* 104 B.R. 799, 808–816 (Bkrtcy.W.D.Tex.1989) will prevail.

See footnote 2 in *In re Wines* 113 B.R. 787 (Bkrtcy.S.D.Fla.1990).

■ Thirdly, ERISA is "applicable non-Bankruptcy law" which excludes the Debtors' pension plan from the bankruptcy estate. In *In re Moore,* 907 F.2d 1476 (4th Cir.1990) the Court affirmed the holdings of the Bankruptcy Court and the District Court that the debtors' interest in an ERISA pension plan was not property of the estate.

The Fourth Circuit stated:

We reject the trustee in bankruptcy's overly restrictive interpretation of Section 541(c)(2) and hold that the term "applicable nonbankruptcy law" is not limited to state spendthrift trust law. In light of this disposition, we not reach the question of whether the plan constitutes a spendthrift trust under South Carolina law.

.      .      .      .      .

"Applicable nonbankruptcy law" means precisely what it says: all laws, state and federal, under which a transfer restriction is enforceable. Nothing in the phrase "applicable nonbankruptcy law" or in the remainder of Section 541(c)(2) suggests that the phrase refers exclusively to state law, much less to state spendthrift trust law.

907 F.2d at 1477–1478 (citations omitted).

The Fourth District's opinion in *Moore* has since been followed in *In re Majul,* 119 B.R. 118 (W.D.Tex.1990).

### III

### F.S. §§ 222.21 and 222.201 are Constitutional

This Court finds that Florida Statutes §§ 222.21 and 222.201 are constitutional. At the outset the Court finds that:

a. The Creditor has failed to join an indispensable party, namely the Attorney General for the State of Florida, to fully ventilate this issue as required by 28 U.S.C.A. Section 2403(b);

and

b. The Creditor's claim that the application of F.S. § 222.21 is an unconstitutional impairment of pre-existing contract rights under Act 119 Article 1 Section 9 and Section 10 of the U.S. Constitution and Art. 1 Section 10 of the Florida Constitution is based upon their claim that the Debtors guaranteed payment of the debt by signing a promissory note dated September 30, 1987, the day before the effective date of one of the Statutes in question.

■ However, the Debtors renewed the obligation by signing another promissory note, Exhibit 14 of the Rule 2004 examination of Ms. Suarez, which is marked "Modification and Renewal of Line # 52019", on October 15, 1988, one year *after* Florida Statute §§ 222.21 and 222.201 went into effect.

That renewal was also guaranteed by the Debtors by the execution of a Guaranty Agreement, on October 15, 1988, one year *after* the statutes complained of went into effect.

Accordingly, Creditor's argument that the application of § 221.21 to the facts of this case is an unconstitutional ex-post facto, retroactive impairment of its contract is unfounded based upon a full review of the facts since the date of the debt, ultimately,

does not pre-date the effective date of the statute.

The Courts of this district have previously ruled that F.S. §§ 222.21 and 222.201 are constitutional. See *In re Seilkop* 107 B.R. 776 (Bkrtcy.S.D.Fla.1989) as to § 222.21 and *In re Bryan* 106 B.R. 749 (Bkrtcy.S.D. Fla.1989) wherein Judge Britton found that the "validly exercised power of the legislature in adopting Fla.Stat. Section 222.201 does not violate the law." Id. at 751–752.

In determining whether legislation violates the contract clause, the question is not whether the legislation affects contracts incidentally, directly or indirectly, but whether it is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end. See *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481.

．　　．　　．　　．　　．

The remedial law in force at the time the contract is made enters into and becomes a part thereof, but the parties to the contract have no vested right under the contract clause of the Federal Constitution, in the particular remedy or modes of procedure then existing. It may be assumed that the parties made their contract with knowledge of the power of the State to change the remedy or method of enforcing the contract, which may be done by a State without impairing contract obligations. See *Pittsburgh Steel Co. v. Baltimore Equitable Society*, 226 U.S. 455, 33 S.Ct. 167, 57 L.Ed. 297. A State may by legislative enactment modify existing remedies and substitute others without impairing the obligation of contracts, provided a sufficient remedy be left or another sufficient remedy be provided. See *Waggoner v. Flack*, 188 U.S. 595, 23 S.Ct. 345, 47 L.Ed. 609. *Mahood v. Bessemer Properties* 18 So.2d 775 (Fla.1944).

This Court is mindful of the maxim that "exemption statutes are to be liberally construed in favor of the Debtor." See *In re Cilek* 115 B.R. 974 (Bkrtcy.W.D.Wis.1990) and *In re Fisher* 63 B.R. 649, 651 (Bkrtcy. W.D.Ky.1986).

CONCLUSION

1. The Debtors' Keogh and I.R.A. funds are exempt pursuant to F.S. §§ 222.21, 222.201 and 522(d)(10)(E) of the Bankruptcy Code. In addition,

2. The Debtors' interest in the Keogh and I.R.A. funds is exempt as ERISA is other federal law within the meaning of Bankruptcy Code Section 522(b)(2). Further,

3. The Debtors' interest in the I.R.A. and Keogh funds is excluded from Debtors' Bankruptcy estate as ERISA is applicable non-Bankruptcy law which excludes the debtors' pension plan from the Bankruptcy estate; and

4. Both F.S. §§ 222.21 and 222.201 are constitutional.

Accordingly, it is

ORDERED AND ADJUDGED that

Creditor, Sun Bank's, objections to exempt property of the Debtors shall be and is hereby OVERRULED.

DONE AND ORDERED.