**In re Richard K. WHITE, Debtor.**

**Bankruptcy No. 90–17426–CJK.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 17, 1991.

Paul P. Daley, Boston, Mass., for debtor.

Warren Agin, Cambridge, Mass., for trustee.

MEMORANDUM OF DECISION ON TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTION FOR ERISA–QUALIFIED PENSION PLANS

CAROL J. KENNER, Bankruptcy Judge.

The Chapter 7 Trustee, Joseph G. Butler, has objected to the Debtor's claim of exemption regarding two pension plans, both of which are qualified pension plans under the Employee Retirement Income Security Act of 1974 ("ERISA"). The Debtor, Richard K. White having elected the exemptions available under 11 U.S.C. § 522(b)(2), argues that his interest in the plans is exempt under a Massachusetts exemption law, G.L. c. 235, § 34A, and under federal law, ERISA § 206(d)(1), codified at 29 U.S.C. § 1056(d)(1), and, in the alternative, that the plans are excluded from his bankruptcy estate by 11 U.S.C. § 541(c)(2). For the reasons set forth below, the court rules that the Debtor's ERISA-qualified pension plans are protected by ERISA § 206(d)(1) and therefore are "property that is exempt under Federal law" as that phrase is used in 11 U.S.C. § 522(b)(2)(A). Accordingly, the Court overrules the Trustee's objection to the Debtor's claim of exemption.

### I. *Facts*

The parties agree on the relevant facts.[1] When the Debtor filed his petition under Chapter 7 of the Bankruptcy Code on December 12, 1990, he elected the exemptions available to him under 11 U.S.C. § 522(b)(2). Among the assets he claimed as exempt were his interests in two pension plans created by his employer, Kahn Paper Company, Inc., for the benefit of its employees: the Kahn Paper Company Pension Plan (the "Pension Plan") and Trust and the Kahn Paper Company Money Purchase Pension Plan (the "Money Purchase Plan") and Trust. According to the Trustee, the former has a value of $7,348.00, and the latter, $69,236.00. The Debtor's interests in both plans are fully vested.

The Pension Plan contains the following provisions. Pension Plan participants are entitled to distribution of their interests in the Plan upon death, retirement at age sixty-five, early retirement upon the earlier of age sixty or the completion of twenty years of service, or upon termination of employment. Participants may not make voluntary contributions to the Plan. They may borrow money from the Plan, but loans to participants are subject to limitations as to amount and term; they must be adequately secured and subject to reasonable interest rates; and they require the consent of the participant's spouse, if any. The Plan also contains the following language prohibiting the assignment or alienation of any participant's interest in the Plan:

> No interest of any Participant or Beneficiary shall be assigned, anticipated, or alienated in any manner nor shall it be subject to attachment, to bankruptcy proceedings or to any other legal process or to the interference or control of creditors or others, except pursuant to the provisions of Section 7.06 [which permits loans to participants] above and qualified domestic relations orders as provided in [Internal Revenue] Code Section 414(p).

Pension Plan, Section 17, at page 90.

The Money Purchase Plan entitles participants to distribution of their interests upon death, disability, or the later of separation from service or attainment of age sixty. Unlike the Pension Plan, the Money Purchase Plan allows participants to make limited voluntary contributions to it. It also allows participants to borrow money from the Plan on terms and conditions similar to those that govern borrowing from the Pension Plan. And like the Pension Plan, the Money Purchase Plan contains the following language prohibiting the assignment or alienation of any participant's interest in the Plan:

> No interest of any Participant or Beneficiary shall be assigned, anticipated, or alienated in any manner nor shall it be subject to attachment, to bankruptcy proceedings or to any other legal process or

---

**1.** The only evidence submitted was the plans themselves, as to which there is no disagreement.

to the interference or control of creditors or others, except pursuant to the provisions of Section 4.08 [which permits loans to participants] above and qualified domestic relations orders as provided in [Internal Revenue] Code Section 414(p). Money Purchase Plan, Section 8, at page 68.

The parties also agree on certain "facts" that might more accurately be characterized as subsidiary conclusions of law. Specifically, they agree that both the Pension Plan and the Purchase Money Plan are "employee pension benefit plans," or simply "pension plans," as those terms are defined in 29 U.S.C. § 1002(2)(A) and used in ERISA § 206(d)(1), codified at 29 U.S.C. § 1056(d)(1).[2] They also agree that the trusts established pursuant to both plans are "qualified trusts" within the meaning of § 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a).[3]

## II. *Arguments*

In his schedules, the Debtor cited Massachusetts General Law c. 235, § 34A as the statute on the bases of which he believed the pension plans were exempt property.[4] The Trustee now makes two arguments in

support of his objection to the claim of exemption. He first argues that G.L. c. 235, § 34A, as it relates to ERISA-qualified pension plans, is preempted by ERISA § 514(a), 29 U.S.C. § 1144(a)[5]; in support of this argument, he cites *Mackey v. Lanier Collections Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). Second, relying on *In re Nadler*, 122 B.R. 162 (Bankr.D.Mass.1990) and anticipating an argument from the Debtor, the Trustee argues that an ERISA-qualified pension plan cannot be excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2).[6]

The Debtor responds with a barrage. He first argues that G.L. c. 235, § 34A, being consonant with the purposes and provisions of ERISA, is not preempted by ERISA; rather, it is fully effective and renders the plans exempt.[7] Second and in the alternative, the Debtor contends that because the plans provide, as required by ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), that the Debtor's interest in the plans may not be alienated or assigned, his interest in the plans is "property that is exempt under Federal law" as that phrase is used in 11

---

**2.** Section 1056(d)(1) provides: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

**3.** In relevant part, 26 U.S.C. § 401(a) provides: "A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." 26 U.S.C. § 401(a)(13).

**4.** General Laws c. 235, § 34A provides:
The right or interest of any person in an annuity, pension, profit sharing or other retirement plan or individual retirement account maintained in accordance with the federal Employee Retirement Income Security Act of 1974 or in any annuity or similar contract purchased with assets distributed from any of the foregoing, shall be exempt from the operation of any law relating to insolvency and shall not be attached or taken on execution or other process to satisfy any debt or liability of such person, except as may be necessary to satisfy (i) an order of a court concerning divorce, separate maintenance or child support under chapters two hundred and eight, two hundred and nine and two

hundred and seventy-three or (ii), in the event of the conviction of such person of a crime, an order of a court requiring him to satisfy a monetary penalty or make restitution to the victim of such crime.
G.L. c. 235, § 34A (added by St.1990, c. 77, § 1).

**5.** ERISA § 514(a), codified at 29 U.S.C. § 1144(a), provides:
"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."
29 U.S.C. § 1144(a).

**6.** Section 541(c)(2) provides: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).

**7.** The Trustee does not deny that G.L. c. 235, § 34A, if not preempted, would provide an exemption for the Debtor's plans.

U.S.C. § 522(b)(2)(A) [8] and therefore is exempt from the estate. Third, the Debtor argues that even if the plans are not exempt property, they are nonetheless excluded from the bankruptcy estate by 11 U.S.C. § 541(c)(2) because ERISA § 206(d)(1) constitutes "applicable nonbankruptcy law" under which the plans' restrictions on the transfer of the Debtor's beneficial interest is enforceable; and, in the alternative, because the plans themselves are spendthrift trusts whose alienation provisions are enforceable under Massachusetts law. Debtor further argues that even if the plans are neither excluded nor exempt, the Trustee is not entitled to turnover of the Debtor's interest in the plans because the Debtor's interest is still inchoate, no event having occurred to trigger distribution. Lastly, the Debtor contends that a request for turnover must take the form of an adversary proceeding, which the Trustee has not employed.

III. *Discussion*

The court turns first to the Debtor's argument under 11 U.S.C. § 522(b)(2)(A): because the plans provide, as they are required to by ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), that the Debtor's interest in the plans may not be alienated or assigned, his interest in the plans is "property that is exempt under Federal law" as that phrase is used in 11 U.S.C. § 522(b)(2)(A) and therefore is exempt from the estate. This issue has not been addressed in this circuit. The majority of courts that have addressed this issue, including four circuit courts of appeal, have rejected the Debtor's argu-

ment and concluded that ERISA's antialienation provision is not an exemption within the meaning and scope of § 522(b)(2)(A)'s "other federal law" provision.[9] The lead case for this position is *In re Goff,* 706 F.2d 574, 582–586 (5th Cir.1983), in which, ironically, the court's conclusion on this issue was dicta. The *Goff* court's reasoning has been the sum and substance of the opinion of virtually every other court to reach its conclusion.

*Goff* did not deny that ERISA plans are "exempt under federal law" as those words are commonly understood. Rather on the basis of the legislative history of 11 U.S.C. § 522(b)(2)(A), it concluded that Congress did not intend to include ERISA-qualified plans among the "property that is exempt under federal law," as that phrase is used in § 522(b)(2)(A). Both the Senate and House Reports regarding § 522(b)(2)(A) contained a list of ten federal exemptions that the Reports described as "some of the items that may be exempted under other federal laws." [10]; ERISA is not mentioned in the list or elsewhere in this part of the legislative history. The *Goff* court reasoned that ERISA was a matter of such prominence and legislative concern that its absence from the lists is "highly probative" of Congressional intent to exclude it from the federal exemptions available under § 522(b)(2)(A). The court further concluded that the ERISA exemption was different in kind from those listed; and that the property protected by the ERISA exemption is different in kind from that protected by the enumerated exemptions. On the

---

8. In relevant part, section 522(b) provides:
   Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in ... paragraph (2) of this subsection.... Such property is— ... (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section.
   11 U.S.C. § 522(b)(2)(A).

9. The cases reaching this conclusion are *In re Goff,* 706 F.2d 574 (5th Cir.1983); *In re Graham,* 726 F.2d 1268, 1273–1274 (8th Cir.1984); *In re Lichstrahl,* 750 F.2d 1488, 1490–1492 (11th Cir. 1985); *In re Daniel,* 771 F.2d 1352, 1358–1361 (9th Cir.1985); *Matter of O'Brien,* 94 B.R. 583, 588–589 (W.D.Mo.1988); *Creasy v. Coleman Fur-*

*niture Co.,* 83 B.R. 404, 409–410 (W.D.Va.1988); *In re Conroy,* 110 B.R. 492 (Bankr.D.Mont.1990); *In re Alagna,* 107 B.R. 301 (Bankr.D.Colo.1989); *In re Toner,* 105 B.R. 978 (Bankr.D.Colo.1989); *In re Dyke,* 99 B.R. 343 (Bankr.S.D.Tex.1989); *In re Gribben,* 84 B.R. 494 (S.D.Ohio 1988); *In re Slezak,* 63 B.R. 625 (Bankr.W.D.Ky.1986); *Gilbert v. Osburn,* 56 B.R. 867 (Bankr.S.D.Ohio 1986); and *In re Kerr,* 65 B.R. 739 (Bankr. D.Utah 1986).

10. S.Rep. No. 95–989, 95th Cong., 2d Sess. 75, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5861; H.Rep. No. 95–595, 95th Cong., 2d Sess. 360 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6316.

basis of these two considerations—ERISA's absence from the list and the differences between the ERISA exemption and the listed exemptions—the *Goff* court concluded that § 522(b)(2)(A) should not be read to permit Debtors to exempt their interests in ERISA plans from their bankruptcy estates.

A significant and growing minority, comprised primarily of more recent cases, has rejected *Goff*'s reasoning and reached the opposite conclusion.[11] The minority position is persuasively articulated in *In re Komet*, 104 B.R. 799, 805–816 (Bankr. W.D.Tex.1989). In *Komet*, the court first made clear that outside of bankruptcy, ERISA's antialienation provision is an enforceable federal exemption. The court then proceeded to argue, against *Goff*, that the legislative history of 11 U.S.C. § 522(b)(2)(A) should not be used or construed to create an ERISA exception to the plain language of § 522(b)(2)(A). *Komet*'s argument is lengthy and thorough; I adopt its reasoning entirely but limit my summary to a few of its points.

The *Komet* court argues that *Goff* violates the cardinal rule of statutory construction against resorting to legislative history to interpret a statute that is clear on its face. It further argues that if one must resort to the legislative history, one should consider certain factors overlooked in *Goff*. First among these is the history of the "existing exemptions" scheme of § 522(b)(2), under which federal bankruptcy laws have historically deferred to nonbankruptcy exemption statutes regarding the nature and extent of exemptions a debtor could claim in bankruptcy. Bankruptcy laws have been *neutral* with respect to the nonbankruptcy exceptions. That is, bankruptcy laws have not conditioned, modified, or limited the availability of nonbankruptcy exemptions; and neither the Bankruptcy Code nor the legislative history demon-strates any intention of altering this historical policy.

Second, *Komet* argued that *Goff* committed an error of logic when it reasoned that the failure to include something on an illustrative list is probative of an intent to exclude it from the list. The *Komet* court emphasized properly that the list in the legislative history did not purport to be exhaustive and, therefore, that nothing conclusive can be deduced from ERISA's exclusion. This Court agrees with *Komet*'s analysis here but further notes that the list in the legislative history does not even purport to be illustrative, at least not if "illustrative" is taken to mean representative. And without a representative list, no court can discern anything from the list about the nature of the exemptions, if any, that Congress supposedly meant to exclude from the scope of § 522(b)(2)(A).

For these reasons and the others developed in *Komet*, this Court concludes that ERISA-qualified plans are "property that is exempt under Federal law" as that phrase is used in 11 U.S.C. § 522(b)(2)(A). Therefore, the Trustee's objection to the Debtor's claim of exemption should be overruled.[12] A separate order will enter accordingly.

---

11. The cases reaching this conclusion are *In re Hinshaw*, 23 B.R. 233 (Bankr.D.Kan.1982); *In re Komet*, 104 B.R. 799 (Bankr.W.D.Tex.1989); *In re Burns*, 108 B.R. 308 (Bankr.W.D.Okla.1989); *In re Felts*, 114 B.R. 131 (Bankr.W.D.Tex.1990); *In re Messing*, 114 B.R. 541, 545 (Bankr. E.D.Tenn.1990); *In re Starkey*, 116 B.R. 259, 264–266 (Bankr.D.Colo.1990); *In re Majul*, 119 B.R. 118 (Bankr.W.D.Tex.1990); and *In re Suarez*, 127 B.R. 73, 21 B.C.D. 1144, 1147 (Bankr. S.D.Fla.1991).

12. Having so ruled, the Court need not address the parties' other arguments.